854 So.2d 11 (2003)
Hollie Jean WATTS, Appellant,
v.
Mark Harrison WATTS, Appellee.
No. 2001-CA-01181-COA.
Court of Appeals of Mississippi.
March 11, 2003.
Certiorari Denied September 4, 2003.
*12 James R. Hayden, Hattiesburg, attorney for appellant.
Dempsey M. Levi, Ocean Springs, attorney for appellee.
En Banc.

MODIFIED OPINION ON MOTION FOR REHEARING
LEE, J., for the Court.
¶ 1. The motion for rehearing on this matter is denied. The original opinion issued in this case is withdrawn, and the following opinion is substituted as the opinion of this Court.

PROCEDURAL HISTORY AND FACTS
¶ 2. Hollie Jean Watts and Mark Harrison Watts were married on May 24, 1986, and two daughters were born to their marriage, Jessica, in 1988, and Megan, in 1992. Hollie and Mark separated on January 20, 2000, and were granted a divorce on the grounds of irreconcilable differences on June 20, 2001. The special judge awarded custody of the children to Mark with liberal visitation to Hollie, denied alimony to Hollie, ordered Hollie to pay child support, and ordered the division of marital assets and liabilities. Hollie appeals to this Court asserting the following issues: (1) the special judge should have recused himself voluntarily; (2) the decision of the special judge was not in the best interest of the children due to the length of time between the trial and the judge's final decision; (3) the special judge erred in not awarding alimony to Hollie; and (4) the special judge erred in granting primary custody of the minor children to Mark. As further described, we find that the special judge erroneously awarded primary custody of the children to Mark and we reverse and remand.

DISCUSSION OF ISSUES

I. DID THE SPECIAL JUDGE ERR IN GRANTING PRIMARY CUSTODY OF THE CHILDREN TO MARK WATTS?
¶ 3. The standard of review in child custody cases is similar to the standard in all domestic relations cases. A reversal is proper if the chancellor is manifestly in error or has applied an erroneous legal standard. Williams v. Williams, 656 So.2d 325, 330 (Miss.1995). Appellate courts need only to determine if the chancellor's decision was supported by credible evidence. Lee v. Lee, 798 So.2d 1284(¶ 22) (Miss.2001).
*13 ¶ 4. It is well settled that in child custody cases, the polestar consideration is the best interest of the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). The factors used to determine what is in the "best interests" of a child with regard to custody are: (1) age, health and sex of the child; (2) determination of the parent that had the continuity of care prior to the separation; (3) which parent has the best parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of the parent and responsibilities of that employment; (5) physical and mental health and age of the parents; (6) emotional ties of the parent and child; (7) moral fitness of the parents; (8) the home, school and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) stability of home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship. Id.
¶ 5. However, an appellate court must find a chancellor in error where the chancellor improperly considers and applies the Albright factors. Hollon v. Hollon, 784 So.2d 943(¶ 11) (Miss.2001). In determining whether the chancellor abused his discretion in applying the Albright factors, the appellate court "reviews the evidence and testimony presented at trial under each factor to ensure [the chancellor's] ruling was supported by record." Hollon, 784 So.2d at (¶ 13). Furthermore, differences in religion, personal values, and lifestyles should not be the sole basis for custody decisions. Albright, 437 So.2d at 1005.
¶ 6. We must now review the evidence and testimony presented at trial under each Albright factor to determine whether the ruling by the special judge was supported by the record.

Age, health and sex of the children
¶ 7. Jessica was born in 1988 and Megan was born in 1992. The special judge weighed this factor in Hollie's favor because the children are females. According to Mark's testimony, he admitted that Hollie would be better equipped to handle certain issues as the girls matured. We find the record supported the special judge's decision that this factor favors Hollie.

Continuity of care
¶ 8. The special judge found Mark to be more credible on this factor. However, Hollie has had physical custody of the children since the separation for over a year and a half. The special judge neglected to point out that Mark had neither paid child support to Hollie since the separation nor attempted to take custody of the children. Furthermore, the special judge inexplicably placed excessive weight on the fact that Mark occasionally cut the girls' hair and trimmed their nails. We fail to see how occasional grooming by Mark or his mother outweighs Hollie's proven record of continued care for the children. We find the determination by the special judge to be unsupported by the evidence.

Parenting skills and willingness and capacity to provide primary child care
¶ 9. The special judge recognized that both Hollie and Mark are close to the children and each desires to be the primary caregiver of the children. However, this factor was also weighed heavily in Mark's favor, despite evidence requiring the contrary. The special judge completely discredited any testimony citing to the fact that Hollie is a good mother and only focused on unsubstantiated testimony against Hollie. Mark testified that Hollie is a good mother, even though he constantly tried to discredit her abilities. Hollie gets the girls ready for school, takes them to school, picks them up after school, participates *14 directly in their extracurricular activities, and takes them to the doctor. On the other hand, Mark's hectic work schedule prevents him from participating in the children's extracurricular activities. Mark claims to have the better parenting skills, but his only reason in support of this statement is the fact that he occasionally trims their fingernails or his mother gets their hair cut. According to the record, Mark has made no effort to retain custody of the children since the separation. In fact, the record shows that Mark's mother takes care of the children more than he does. We find the record does not support weighing this factor in Mark's favor, and the special judge abused his discretion in so finding.

The employment of the parent and the responsibilities of that employment
¶ 10. We find it inexplicable as to why the special judge found in favor of Mark on this factor. Hollie is a middle school teacher with work hours ideal for raising children, including having summers free to spend with the children. Hollie is able to pick the children up from school and take them to any activities in which they are involved. Mark is an attorney and is also the Jackson County prosecuting attorney. He has long work hours and would not be able to pick the children up from school. Mark testified that he would have to pay his secretary or someone else to pick the children up and keep them until he got off work. If that failed, his mother would have to pick them up, take them to any extracurricular activities and keep them until Mark got home. According to Mark's testimony, he had problems staying up at night with the children when they were sick if he had to be in court the next day. The special judge was certainly made aware that Mark has a professional degree and a higher salary than Hollie; however, this higher salary is not beneficial to the children if Mark's work schedule necessitates the employment of others to care for the children. There was sufficient evidence in the record to weigh this factor in favor of Hollie, and, again, the special judge's finding to the contrary was error.

Physical and mental health and age of the parents
¶ 11. Hollie is thirty-nine years old and Mark is thirty-seven years old. Although both are in good health, the special judge weighed this factor in favor of Mark because evidence was present that Hollie takes antidepressants and occasionally drinks alcohol.

Emotional ties of the parent and child
¶ 12. The special judge determined that because both parents clearly love the children, there are equally strong emotional ties between each child and each parent. However, Jessica, the eldest child, told the special judge she wanted to live with Hollie because Mark works all the time, he has a temper, and she does not like Mark's girlfriend.

Moral fitness of the parents
¶ 13. The special judge determined that, because there was no evidence to prove either parent to be morally unfit, the parties were equal in this regard. However, Hollie's initial complaint for divorce alleged adultery and, although the adultery grounds were later withdrawn, there were subtle references throughout the trial to an improper relationship between Mark and his secretary.

The home, school and community record of the child
¶ 14. The children have lived in the Vancleave community all their lives, they attend schools in that community, and they are active in extracurricular activities at school and in the community. In weighing this factor in favor of Mark, the special *15 judge found that Mark has an extended family living in the area who would be supportive. Although Hollie does not have family in the area, she testified that she would continue to ask Mark's mother for help. We find Hollie should not be penalized because she does not have a large family nearby. Furthermore, we find the special judge placed too much weight on a statement Hollie supposedly made declaring that she would move from Mississippi and take the children. Hollie testified that she said this before the separation and only in anger, immediately afterwards telling Mark that she would not move with the children.

The preference of the child at the age sufficient to express a preference
¶ 15. Jessica was old enough to express her preference, and she told the special judge that she wanted to live with her mother. According to Jessica, her father worked all the time, he had a temper, and she did not like his girlfriend. The only evidence the special judge cited in his opinion was a statement by Hollie telling Jessica that Mark would not be able to participate in Jessica's horse shows the way Hollie participated. The special judge found this statement sufficient to poison Jessica against her father; however, there was no evidence to support this finding.

Stability of home environment and employment of each parent
¶ 16. This factor has been discussed above along with the employment of the parents and the community involvement of the children. Although the special judge weighed this in favor of Mark, as described, we find insufficient evidence in the record to support this conclusion.

Other factors relevant to the parent-child relationship
¶ 17. The special judge found no other factors relevant. After weighing all the factors, the special judge found the best interests of the children would be served by granting primary custody to Mark. However, in reviewing the briefs and the record, we find the conclusions reached by the special judge are not an accurate reflection of the facts. We are not substituting our judgment for the special judge, but we find that he placed too much importance on certain facts and disregarded others in deciding to award Mark custody. Therefore, we find the special judge abused his discretion in awarding custody to Mark and thereby reverse and remand to the chancellor for further proceedings consistent with this opinion.
¶ 18. Having found reversal to be warranted on the issue of custody, we briefly address Hollie's remaining issues.

II. DID THE SPECIAL JUDGE ERR IN NOT AWARDING ALIMONY TO HOLLIE?
¶ 19. The Mississippi Supreme Court has held that an award of alimony is left to the chancellor's discretion. Voda v. Voda, 731 So.2d 1152(¶ 7) (Miss.1999). In cases of an outright denial of alimony, the chancellor will not be reversed unless the decision was seen as "so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion." Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). The following factors are to be considered by the chancellor in deciding whether to award alimony: the income and expenses of the parties, the health and earning capacities of the parties, the needs of each party, the obligations and assets of each party, the length of the marriage, the presence or absence of minor children in the home, the age of the parties, the standard of living of the parties during the marriage and at support determination, the tax consequences of the spousal support order, fault or misconduct, wasteful dissipation of assets by either party, and any other equitable *16 factors. Id. We find it is clear the special judge divided the marital assets in such a way as to alleviate the need for an alimony award to Hollie.
¶ 20. The special judge noted that a disparity existed in Mark and Hollie's earning capacities. At the time of the trial, Mark's projected yearly net income was $48,289.80, his net monthly income was $4,024.15, and his listed expenses totaled $4,336.19. At the time of the trial, Hollie's projected yearly income was $20,777.88, her net monthly income was $1,731.49, and her listed expenses totaled $2,257.52. Based on these figures, the disparity in income alone reveals Mark had substantially greater income than Hollie.
¶ 21. The special judge awarded the following assets to Hollie: a horse and his tack valued at $1,500; a truck valued at nearly $23,000; various guns valued at $2,500; a camcorder; camping equipment; personal belongings from the marital residence; household goods worth $1,000; and nearly $54,000 in cash from Mark. Hollie was also ordered to pay debts, including Hollie's truck note, with a balance of just under $23,000; debts to various banks; and credit card debt.
¶ 22. The special judge awarded Mark the following assets: the marital residence, valued at $190,000; guns valued at $2,500; a horse trailer valued at $4,000; a four wheeler worth $3,000; a truck worth $2,000; a $700 trailer; a $5,000 tractor; the joint savings account containing $215; household goods worth $4,000; a truck worth $17,000; horses and tack valued at $5,500; and all personal property in his possession. Mark was also ordered to pay a number of debts, including the debt owed on the house in the amount of $99,245; his truck note for $17,000; bank debts, including one for $4,189 and another for $2,590; credit card debt; debt owed to the IRS for the parties' 1999 taxes at $4,869; and the cash to Hollie.
¶ 23. Regarding the other factors, the parties were married for fourteen years, the parties share joint legal custody of the children with primary physical custody to Mark, and Hollie was awarded standard visitation and ordered to pay child support in the amount of three hundred dollars per month. At the time of the divorce, Mark was thirty-seven and Hollie was thirty-nine, and they maintained a middle-class standard of living. There was no evidence of waste by either party. However, there was testimony from Hollie that Mark's questionable relationship with his secretary was a factor contributing to the divorce. The special judge evaluated all of this information and concluded Hollie was not entitled to an award of alimony. Since we have found that reversal is warranted on the custody issue, we also reverse the holding with regard to alimony, since the presence of children is a factor in the chancellor's decision concerning an award of alimony.

III. DID THE SPECIAL JUDGE ERR IN NOT RECUSING HIMSELF VOLUNTARILY FROM THE PROCEEDINGS?
¶ 24. According to East v. East, 775 So.2d 741(¶ 4) (Miss.Ct.App. 2000), the standard of review in domestic relations cases is as follows: "this court will not disturb the chancellor's findings unless the court's actions were manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard." Furthermore, Canon 3 C(1) of the Mississippi Code of Judicial Conduct states that a judge should disqualify himself "in a proceeding in which his impartiality might reasonably be questioned." An objective standard is used in reviewing whether a judge should have recused himself. Steed *17 v. State, 752 So.2d 1056(¶ 11) (Miss.Ct.App. 1999).
¶ 25. In what we perceive to be an empathetic gesture, the special judge told the parties in open court that he had been through a divorce, received custody of his daughter, and had visitation problems. Based on these remarks, Hollie failed to file a motion for a new trial seeking recusal or a post-trial motion for recusal. In City of Biloxi v. Cawley, 332 So.2d 749, 749 (Miss.1976), the chancellor made a statement before trial that the City of Biloxi claimed was prejudicial only after the final decree was entered against the City. The supreme court noted the City knew about this statement and proceeded with the trial anyway, and just because the City lost the case does not necessarily indicate the chancellor was biased. Id. at 750. The court found in order to properly request a recusal, such request must be done prior to trial or as soon as the reasons for possible recusal are known. Id. Since Hollie brought up the issue of recusal only after the case was decided against her, we find she effectively acquiesced to the judge hearing her case.

IV. DID THE SPECIAL JUDGE ERR IN TAKING THIS CASE UNDER ADVISEMENT FROM DECEMBER UNTIL MAY?
¶ 26. In Hodge v. Hodge, 186 So.2d 748, 750 (Miss.1966), the supreme court stated that a year long advisement by the chancellor was "not of itself erroneous and certainly was not reversible error" and that the length of time is utilized within the chancellor's discretion. However, the court did say that prolonged periods of advisement should be avoided in child custody cases, especially if the children are of a tender age. Id. This is not the case here, since the children were twelve and eight years old.
¶ 27. The special judge stated in his opinion that he reviewed the trial transcripts and the evidence presented before making his decision. There was no evidence to show that the special judge abused his discretion by taking the case under advisement from December until May. This issue is without merit.
¶ 28. THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT IS REVERSED AND REMANDED IN PART AND AFFIRMED IN PART. COSTS OF THIS APPEAL ARE TAXED EQUALLY TO THE APPELLANT AND THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING AND CHANDLER, JJ., CONCUR. MYERS AND GRIFFIS, JJ., NOT PARTICIPATING.