914 So.2d 316 (2005)
In the Matter of Filiation of a Minor Child, M.D.B.
No. 2004-CA-01020-COA.
Court of Appeals of Mississippi.
November 1, 2005.
*317 Brent M. Bickham, Ocean Springs, attorney for appellant.
*318 David Elias Kihyet, attorney for appellee.
EN BANC.
CHANDLER, J., for the Court.
¶ 1. M.D.B. was born in California to B.G. and T.B., an unmarried couple.[1] T.B. and B.G. eventually moved to Jackson County, Mississippi, where they signed a child custody agreement. B.G. and M.D.B. later returned to California. B.G. filed a motion in the Jackson County Chancery Court to set aside the custody order. After holding a hearing, the chancellor set aside the initial custody agreement, awarded custody to B.G., and established a visitation schedule for T.B. T.B. appeals, raising the following issues:
I. WHETHER THE CHANCELLOR ERRED IN HIS APPLICATION OF THE ALBRIGHT FACTORS
II. WHETHER THE CHANCELLOR ERRED WITH REGARD TO T. B.'S VISITATION RIGHTS
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. M.D.B. was born on January 2, 2003, in San Bernandino, California, to unmarried parents. His father, T.B. was eighteen years old at the time, and his mother, B.G., was seventeen years old at the time. When T.B. was fifteen years old, he met V.A. and G.A., a couple who was not related to T.B. but ultimately treated him, M.D.B, and B.G. as relatives of their own. When T.B. became estranged from his own parents, he moved in with V.A. and G.A.
¶ 4. G.A.'s employment caused him to move to several different cities. In April of 2003, T.B. moved with V.A. and G.A. to Cocoa Beach, Florida. B.G. and M.D.B. followed them and moved in with the V.A. and G.A. In August of 2003, everyone moved to Gautier, Mississippi. When the parties were living in Mississippi, T.B. left home and took M.D.B. away from B.G. for nine days. B.G. did not see her son again until she signed a custody agreement.
¶ 5. On October 21, 2003, B.G. and T.B. entered a child custody agreement in Jackson County, Mississippi. By this point in time, B.G.'s relationship with T.B., V.A. and G.A. had deteriorated. Under the custody agreement, each parent was to have physical custody of M.D.B. for seven days at a time. B.G. claimed that she signed the agreement because T.B. threatened to abscond to Mexico with M.D.B. if she did not sign the agreement, a claim that T.B. denied. B.G. testified that she had no choice but to sign the agreement in order to continue seeing her baby.
¶ 6. After the joint custody agreement was signed, everyone moved to Mandeville, Louisiana. T.B. continued to live with the V.A. and G.A., and B.G. lived in her own apartment. V.A. took care of M.D.B. while T.B. and B.G. were at work and school.
¶ 7. In mid-December of 2003, B.G. moved with M.D.B. to California and began living with her mother. She made this move without telling T.B., V.A. or G.A. On December 31, 2003, B.G. filed a motion in Jackson County, Mississippi, requesting that the custody order from October be set aside, on the grounds that she was coerced into signing the order. The Jackson County Chancery Court held a hearing on January 12 and 13, 2004.
*319 ¶ 8. At the time of the hearing, T.B. had moved back to Gautier. He testified that he was living with a friend because he could not afford an apartment but indicated that he would return to Mandeville to live with V.A. and G.A. At trial, V.A. and G.A. stated that they would completely support M.D.B. and T.B. The court found that V.A. and G.A. were acting in loco parentis over T.B.[2]
¶ 9. The chancellor set aside the order from October 21, 2003, finding that B.G. signed the initial custody agreement under duress. The chancellor applied the Albright factors and awarded custody to B.G.
¶ 10. The chancellor proceeded with T. B.'s visitation rights under the assumption that M.D.B. and B.G. would be living in California. The chancellor set visitation in California for the fourth week of each month, subject to T.B. residing no further than one hundred miles away from B.G. T.B. was also entitled to five days' visitation for Thanksgiving and Christmas. When T.B. filed his motion to reconsider, the chancellor expanded T.B.'s visitation rights to include week-long visitations at Easter[3] and Spring Break, two weeks in the summer when M.D.B. reaches six years of age, and four weeks in the summer when M.D.B. reaches age ten. In the event that T.B. and B.G. live within one hundred miles of each other, T.B. is entitled to visitation on alternating weekends.

ANALYSIS
¶ 11. In child custody cases, the polestar consideration is the best interest of the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). In order to arrive at a custody arrangement that is in the child's best interest, the chancellor must make specific findings on each of the factors listed in Albright: (1) age, health and sex of the child; (2) determination of the parent that had the continuity of care prior to the separation; (3) which parent has the best parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of the parent and responsibilities of that employment; (5) physical and mental health and age of the parents; (6) emotional ties of parent and child; (7) moral fitness of the parents; (8) the home, school and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) stability of home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship. Id. This Court reviews the evidence and testimony presented at trial under each factor in order to insure that the ruling was supported by the record. Watts v. Watts, 854 So.2d 11, 13(¶ 5) (Miss.Ct.App.2003).
¶ 12. Both T.B. and B.G. are under the age of twenty-one and are considered minors under Mississippi law. Miss.Code Ann. § 1-3-27 (Rev.1998). T.B. argues that the parties' status as minors should have compelled the chancellor to have carefully considered V.A. and G.A.'s character, financial support, and positive influence over T.B. and M.D.B. in awarding child custody. T.B. claims that the parents' status as minors should have compelled *320 the court to compare the respective influences of B.G.'s mother and V.A. and G.A. as "other factors relevant to the parent-child relationship." There is no legal precedent requiring that a chancellor consider the support and influence of the guardians of the parents when the parents are minors. It is the responsibility of the chancellor, not this Court, to determine the weight and worth of the evidence. Rainey v. Rainey, 205 So.2d 514, 515 (Miss.1967). Therefore, the chancellor was within his discretion when his application of the Albright factors focused on the behavior of B.G. and T.B., as opposed to applying the Albright factors to B.G.'s mother and V.A. and G.A.

I. WHETHER THE CHANCELLOR ERRED IN HIS APPLICATION OF THE ALBRIGHT FACTORS

Age, Health, and Sex of the Child
¶ 13. M.D.B. was one year old at the time of the trial and in excellent health. This factor favors neither party, and T.B. agrees with this finding.

Continuity of Care
¶ 14. The chancellor awarded this factor to B.G. The chancellor found that B.G. was the primary caregiver of M.D.B. for the first four months of his life, until B.G. moved to Florida to be with T.B. The chancellor found that B.G. has been attentive to M.D.B. since the day he was born, a finding T.B. does not contest.

Best Parenting Skills
¶ 15. T.B. acknowledged that B.G. was a good mother. B.G. acknowledged that T.B. was a good father when he chose to spend time with his son. However, she also claimed that T.B. spends too much time away from home at night to go fishing all night with his friends or to stay out late at night without telling anyone of his whereabouts. T.B. admitted that he occasionally stayed out late, but he made contradictory statements as to why he stayed out late at night. These contradictory statements led the chancellor to question T.B.'s credibility.

Employment of the parties
¶ 16. At the time of trial, neither T.B. nor B.G. was employed. T.B. had received a G.E.D. and received an E.M.T. certification, whereas B.G. has not yet completed high school. T.B. testified that he was reasonably certain that he could work at Avondale Shipyard in New Orleans, Louisiana, through connections from G.A., who has a position with the company. B.G. testified that she has a job opportunity in California as a caretaker for an elderly woman. The chancellor found that this factor favored neither party, and the finding was supported by the evidence.

Physical and Mental Health of the Parents
¶ 17. The chancellor found that the physical health of both parents is good, but the chancellor questioned the mental health of the parents. T.B. stated that he has a depressive disorder for which he has taken medication and received professional help. V.A., G.A. and T.B. accused B.G. of being difficult, demanding, quick-tempered, and argumentative. T.B. testified that B.G. handled disputes by "screaming, yelling, crying, and cursing." The chancellor noted B.G.'s demeanor in the courtroom, describing B.G. as "very high strung" and "apprehensive, nervous, and loud." This factor favored neither parent.

Emotional Ties of the Parents
¶ 18. The chancellor found that both parties clearly loved and cared for the child. However, the chancellor found that this factor favored B.G. because she has shown more attention to M.D.B. as a result of T.B.'s tendencies to stay out late at *321 night. This finding was supported by the record.

Moral Fitness of the Parents
¶ 19. The chancellor found this factor to favor B.G. because T.B. admitted to acts of sexual involvement with other women during his relationship with B.G. The record supports this conclusion.

Home, School and Community Record of the Child
¶ 20. The chancellor declared that M.D.B.'s home record was atrocious, because T.B., V.A. and G.A. move frequently. The school and community factors were not applicable.

Preference of the Child
¶ 21. This factor was not applicable.

Stability and Home Environment of Each Parent
¶ 22. The chancellor found neither B.G. nor T.B. offered stability to the child because they were young, unmarried parents. Therefore, the chancellor considered the respective extended family relationships of T.B. and B.G., which favored neither parent. V.A. and G.A. were found to be loving and attentive to T.B. and M.D.B., and the chancellor found that V.A. and G.A. had been standing in loco parentis over T.B. and M.D.B. B.G. was able to rely on her mother for support.
¶ 23. B.G.'s job prospect as a caretaker enabled B.G. to work while taking care of M.D.B. The chancellor also found that B.G. was the more attentive parent, and that she was the more credible witness. The record supports such a conclusion.

Other Factors
¶ 24. The chancellor did not consider any other factors.

Conclusion
¶ 25. The chancellor applied each of the Albright factors in deciding to award custody to B.G., and his findings were supported by the record.

II. WHETHER THE CHANCELLOR ERRED WITH REGARD TO T. B.'S VISITATION RIGHTS
¶ 26. T.B. argues that the visitation schedule the chancellor ordered would not allow T.B. to establish a meaningful relationship with his son. "On visitation issues, as with other issues concerning children, the chancery court enjoys significant discretion in making its determination of what is in the best interest of the child." Olson v. Olson, 799 So.2d 927, 929(¶ 7) (Miss.Ct.App.2001). The specification of times for visitation is within the discretion of the chancellor. Cheek v. Ricker, 431 So.2d 1139, 1146 (Miss.1983); Buntyn v. Smallwood, 412 So.2d 236, 238 (Miss.1982).
¶ 27. B.G. and M.D.B. planned to reside in California indefinitely. While there was uncertainty as to where T.B. would be living, the chancellor did know that T.B. would be living either in Mississippi or Louisiana. The chancellor recognized that frequent visitation with M.D.B. would be difficult and impractical, but he also endeavored to allow T.B. to visit with his son. The chancellor was within his discretion in ordering this visitation schedule, which does allow T.B. to cultivate a meaningful relationship with his son.
¶ 28. THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, IRVING, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] Initials have been substituted for the parties' names to protect the identity of the minor child.
[2] A person acting in loco parentis is one who has assumed the status and obligations of a parent without a formal adoption. Logan v. Logan, 730 So.2d 1124, 1126(¶ 8) (Miss.1998). "The rights, duties and liabilities of one standing in loco parentis are the same as those of a natural parent." Farve v. Medders, 241 Miss. 75, 81, 128 So.2d 877, 879 (1961).
[3] T. B.'s Easter visitation is for odd-numbered years, and his Thanksgiving visitation is for even-numbered years. T.B. is entitled to Christmas holiday visitation with M.D.B. for a one week period each year, commencing on December 26.