¶ 1. The former husband appeals from the decision of a chancellor in a divorce action. He alleges error in the award of custody of the children of the marriage to their mother, a failure of the lower court to follow the recommendations of the guardian ad litem, and an inequitable division of the marital assets. We disagree with these contentions and affirm.
 FACTS ¶ 2. Kevin and Angela Ethridge were married in 1990. In March 2003, Mr. Ethridge filed in Clarke County, Mississippi for a divorce and sought certain temporary relief. The chancellor granted temporary exclusive custody of the couple's three children to Mrs. Ethridge. Their father was granted visitation rights. Following this decision, Mr. Ethridge amended his complaint to include habitual drug use by Mrs. Ethridge as an additional ground for divorce.
 ¶ 3. A guardian ad litem was appointed in February 2004. Mr. and Mrs. Ethridge entered into a consent to divorce in August 2004. They agreed to various divisions of real and personal property and to the means of providing insurance for their children. The remaining issues were the subject of a trial and of this appeal.
 ¶ 4. In October 2004, the guardian ad litem filed his report with the trial court. Mrs. Ethridge was found to be derelict in her duties as a parent due to improper maintenance of the home, absences which left the oldest child in charge of the younger two, and drug use with a boyfriend *Page 266 
who regularly spent time with Mrs. Ethridge and the children. The report recommended that custody be awarded to Mr. Ethridge if these behaviors were substantiated at trial.
 ¶ 5. Following a four-day trial in November 2004, the chancellor granted a divorce on the ground of irreconcilable differences. Custody of the three children was given to their mother, with the father having visitation. The chancellor awarded land and a house in Newton County to Mr. Ethridge and land and a mobile home in Clarke County to Mrs. Ethridge. Each spouse was ordered to assume the debt on the motor vehicle he or she was then using. Mrs. Ethridge received sole use and ownership of a utility trailer that had been purchased and used by her husband during the marriage.
 Issue 1. Application of the Albright factors in child custody decisions.
 ¶ 6. The chancellor awarded sole custody of the children to Mrs. Ethridge, and allowed Mr. Ethridge significant visitation. Mr. Ethridge argues that the chancellor did not properly apply the factors that are to be considered in reaching such decisions. The Mississippi Supreme Court has listed twelve factors to guide lower courts in determining the best interests of the child in custody disputes. Albright v. Albright, 437 So.2d 1003 (Miss. 1983). None should be considered superior to any other in terms of weight, nor is the final conclusion a mathematical one arising from the number of factors that are found to favor each parent.Id.
 ¶ 7. The chancellor devoted five pages of a thirty-three-page opinion to discuss each factor. He characterized the utility of the factors in an insightful manner: "[t]his court does not perceive that the Albright factors are a formula to determine custody. They are factors for the Chancery Court to consider in determining the best interest of a child and accordingly determine custody."
 ¶ 8. Mr. Ethridge relies on one of our prior decisions in his argument that error occurred in the determination of custody.Watts v. Watts, 854 So.2d 11 (Miss.Ct.App. 2003). There we noted that when reviewing custody decisions, we examine the record relevant to each factor in order to determine if there is support for the decision. As an example of a chancellor's giving improper weight to one factor, our Watts decision cited Hollonv. Hollon, 784 So.2d 943 (Miss. 2001). There, the Supreme Court found that the chancellor allowed the "moral fitness" factor ofAlbright to dominate the decision. Moral fitness of the mother could properly be questioned but could not outweigh all other evidence of the mother's fitness to raise the child. Hollon,784 So.2d at 950, citing Roberson v. Roberson, 370 So.2d 1008,1011 (Ala.Civ.App. 1979) ("a mother will not be denied custody for every act of indiscretion or immorality," especially where no detrimental effect on the welfare of the child has been shown);Rippon v. Rippon, 64 Ill.App.3d 465, 21, Ill.Dec. 135,381 N.E.2d 70, 73 (1978) ("indulgence in moral indiscretions alone is not grounds for a change of custody where the children are leading a normal life").
 ¶ 9. Mr. Ethridge alleges that his ex-wife is morally unfit as a parent due to her relationship with a boyfriend and due to alleged drug abuse. The chancellor addressed this issue in his opinion, finding that the moral fitness and home stability factors of Albright did, in fact, favor Mr. Ethridge. Though these factors weighed against Mrs. Ethridge, they were not alone determinative of child custody. There was no substantial evidence that Mrs. Ethridge used illegal drugs, but only that a boy-friend — who *Page 267 
apparently was awaiting sentencing for a conviction — did so.
 ¶ 10. The chancellor made a reasonable analysis of the evidence, found the evidence to raise concerns about the moral fitness of the mother, took steps that we will discuss below to reduce the effect of those concerns, and on balance found that the totality of the evidence supported giving custody to the children's mother. We find no error in that.
Issue 2. The report of the guardian ad litem.
 ¶ 11. The guardian ad litem found that Mr. Ethridge should be awarded custody of the children if Mrs. Ethridge's relationship with a supposed drug user was not altered. In response, the chancellor found the concerns of the guardian ad litem to be "well-founded" and ordered Mrs. Ethridge not to have custody of her children "in the presence of any male to whom she is not married or related between 10:30 p.m. and 7:00 a.m. on the following day."
 ¶ 12. Mr. Ethridge argues that the chancellor failed adequately to explain his reasons for denying him custody of the children, despite "substantiation" of Mrs. Ethridge's drug use and her "refusal" to terminate the relationship with her boyfriend.
 ¶ 13. Mr. Ethridge correctly refers to the guardian ad litem's report as a "recommendation." It is not binding on the chancellor, but it must be considered. The chancellor only referred explicitly to the guardian ad litem's report one time in his opinion, but we find that the significant findings and recommendations of the report were fully addressed in the chancellor's decision.
 ¶ 14. The chancellor must support his findings if he does not adopt the recommendations of the guardian ad litem. In reL.D.M., 848 So.2d 181, 183 (Miss. 2003). Here, the chancellor specifically addressed the issue raised by the guardian ad litem and made suitable allowances for the concerns raised. There was no error.
Issue 3. Equitable division of the marital estate.
 ¶ 15. In dividing the marital estate, the chancellor granted Mrs. Ethridge exclusive possession and ownership of a utility trailer. Mr. Ethridge alleges that the history of use and need favored him for award of the trailer. He also argues that the chancellor did not adequately explain his decision.
 ¶ 16. In the chancellor's lengthy opinion, almost no discussion of the trailer appears. The simple statement is made that the former wife would be granted ownership and the exclusive use of the trailer. Mr. Ethridge argues that the Supreme Court requires when property is being distributed among former spouses in a divorce, that certain factors be analyzed. Ferguson v.Ferguson, 639 So.2d 921, 928 (Miss. 1994). In Mr. Ethridge's view, Ferguson establishes these four steps in a property distribution decision: (1) classify assets as marital or separate; (2) value assets; (3) divide marital property equitably, based on the factors set out in the decision, and (4) award alimony if need after the asset division. The trial court did not discuss these steps on the record.
 ¶ 17. Even though the chancellor did not organize his written findings in this way, we find that the facts of this case made the direction of those four steps self-evident. There was no issue about classifying this trailer as a marital as opposed to an individual asset of one of the parties. The utility trailer was purchased by Mr. Ethridge and at the time of the final hearing was in his possession. Still, he agreed *Page 268 
to classify it as a marital asset. In the pretrial order the trailer was said to "belong to the parties," and the chancellor was to award ownership based on "relative need of the parties and custom and history of use" of the trailer. This pretrial provision set the terms for the decision that the chancellor was to make. There was little need to place a value and then divide the marital assets since this trailer was the only item of tangible personal property that the chancellor was asked to distribute. Among other considerations in Ferguson for making distributions are such issues as the tax consequences and the needs for financial security which could be affected by the distribution. Ferguson, 639 So.2d at 928. Those are irrelevant here.
 ¶ 18. Trying to force every property distribution decision into the framework of a pre-ordained set of factors is not suitable. As was said in the context of a custody question, "Chancellors are not supposed to be automatons, mindlessly applying by rote multi-part tests handed down from above." McRee v. McRee,723 So.2d 1217, 1220 (Miss.Ct.App. 1998). The Ferguson court itself stated that it could not possibly "contemplate every situation that may present itself in future cases." Ferguson,639 So.2d at 930. The Supreme Court has sometimes held that as to the difficult decisions on custody, alimony, and property distribution to be made in many divorces, a chancellor must provide on-the-record findings as to each of the factors identified in its precedents. See Burge v. Burge,851 So.2d 384, 390 (Miss.Ct.App. 2003) (Southwick, P.J., concurring). In other decisions, the Supreme Court has shown more flexibility.Id.
 ¶ 19. There is little evidence on the past use of the trailer. The spouses did not testify about the circumstances of the acquisition and use of the trailer in the same way. They did agree, though, to have the judge allocate this marital asset. Mr. Ethridge testified that he has possessed the trailer for two years and had never known Mrs. Ethridge to use the trailer. However, once the spouses were divorced, and with their daughter Patience needing a trailer to care properly for her horse, Mrs. Ethridge as the custodial parent would need to assume new responsibilities. Mr. Ethridge stated that he would use the trailer for various tasks unrelated to his daughter's horse. Mr. Ethridge believes that Mrs. Ethridge could borrow a trailer from her siblings. Implicit in this assertion of an alternative for his ex-wife, though, is that Mrs. Ethridge will need a trailer.
 ¶ 20. Most of the time, the Ferguson considerations should be examined on the record. However, the only real question as to this simple and single item of property was an equitable one as to which former spouse was more in need of the trailer based on its use during the marriage. In this unusual case of there being only one piece of personal property to divide, with the central evidence on use and need for the trailer being clear, with the parties' written pretrial agreement that prior use and relative need would control the allocation, we conclude that the failure to make the decision in the terminology and with the citations of precedents such as Ferguson to be of no consequence. The chancellor allocated this marital asset based on the pretrial order, which classified it as a marital asset, and he relied on the evidence of the manner in which each spouse and the children would need to use the trailer. There was nothing inequitable about the chancellor's finding with regard to the utility trailer, let alone reversible.
 ¶ 21. We also note, though, that chancellors should continue to articulate on the record their analysis of the guidelines set out in the Supreme Court precedents regarding *Page 269 
the allocations and awards required for a divorce. Most of the time, the absence of those findings would transform the deferential appellate review of a chancellor's decision into guesswork. Here, we do not need to speculate as to the reasons for the allocation of this property, and we find no error.
 ¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF CLARKE COUNTY ISAFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THEAPPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.