JAMES, J.,
concurring in part and dissenting in part:
¶ 24. I agree with the majority that the chancellor was within in his discretion in *1175 denying Shannon’s request for attorney’s fees. However, I find the chancellor improperly applied the Albright factors in his award of child custody. The record does not support the chancellor’s finding that Shannon is better suited to have primary physical custody of the children. I also find reversible error in the chancellor’s failure to provide his reasons for rejecting the guardian ad litem’s recommendations, considering the fact that child-abuse allegations were raised. Therefore, I would affirm in part and reverse and render in part.
STANDARD OF REVIEW
¶ 25. In cases involving the award of child custody, “[t]his Court will not disturb the factual findings of the chancellor unless [they] are manifestly wrong or clearly erroneous.” Brekeen v. Brekeen, 880 So.2d 280, 283 (¶ 4) (Miss.2004) (quoting Jerome v. Stroud, 689 So.2d 755, 757 (Miss.1997)). “However, where the chancellor improperly considers and applies the Albright factors, an appellate court is obliged to find the chancellor in error.” Id. (quoting Hollon v. Hollon, 784 So.2d 943, 946 (¶ 11) (Miss.2001)).
DISCUSSION
I. Whether the chancellor’s Albright analysis was supported by substantial credible evidence.
¶ 26. The majority asserts that the chancellor’s award of primary custody to Shannon was supported by substantial credible evidence. I respectfully disagree. It has long been held that “the polestar consideration in child custody cases is the best interest and welfare of the child.” Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). The applicable factors used by the chancellor in determining which parent is better suited for primary custody are:
1) age, health and sex of the child; 2) determination of the parent that had the continuity of care prior to the separation; 3) which has the best parenting skills and which has the willingness and capacity to provide primary child care; 4) the employment of the parent and responsibilities of that employment; 5) physical and mental health and age of the parents; 6) emotional ties of parent and child; 7) moral fitness of parents; 8) the home, school, and community record of the child; 9) the preference of the child at the age sufficient to express a preference by law; 10) stability of home environment and employment of each parent; 11) other factors relevant to the parent-child relationship.
Hollon, 784 So.2d at 947 (¶ 12) (citing Al-bright, 437 So.2d at 1005). A discussion of each of these factors is warranted.
1. Age, Health, and Sex of the Children
¶ 27. The chancellor found this factor favored Shannon, considering that both children were male. The guardian ad li-tem found this factor did not weigh in favor of either parent.
2. Continuity of Care Prior to Separation
¶ 28. The chancellor found, as did the guardian ad litem, that this factor weighed in favor of Mary Jane. The record shows that Mary Jane, as a stay-at-home mom, was the primary caretaker of the children. Prior to the parties’ separation, Mary Jane was responsible for taking the children to and from school, scheduling the children’s doctor’s appointments, and helping the children with their schoolwork. Mary Jane testified that she also took a leadership role in caring for William’s developmental delays. She stated that William had speech problems, and that she was *1176 responsible for taking him to regular therapy sessions with a speech pathologist. Shannon testified that he never attended any of William’s therapy sessions.
3.Parenting Skills and the Willingness and Capacity to Provide for the Children
¶29. The chancellor found this factor favored Shannon. The chancellor based this determination primarily upon Mary Jane’s inappropriate contact with Brown and Hurt. The guardian ad litem found this factor weighed in favor of Mary Jane, as she was responsible for caring for the children on a daily basis. The guardian ad litem also considered Shannon’s absence from William’s therapy sessions. In addition, Shannon testified that, because Mary Jane was a nurse, she was better suited than he to handle William’s therapy sessions. During trial, when asked why he never attended any of William’s therapy sessions, Shannon responded, “I wasn’t going to start that battle.” Regarding Mary Jane’s inappropriate spousal conduct as it relates to her parenting skills, the guardian ad litem stated the following:
[WJhile it may certainly be the case that Mrs. Borden was not a good wife over the last year-and-a-half prior to the separation, the guardian ad litem could not find that she was an inadequate[,] or below what was required of[,] a mother or that her parenting had changed in any appreciable way over the year.... As a result ... would recommend that the factor of parenting skills ... be found in favor of Mrs. Borden.
¶ 30. The chancellor erroneously found that Mary Jane’s contact with Brown and Hurt reflected on her skills and responsibility as a parent. The record does not support that determination. Mary Jane’s behavior was indisputably a poor reflection on her moral fitness, but not on her parenting skills. There is no evidence that Mary Jane’s contact with Brown and Hurt impinged on her parental duties, nor is there any evidence that her limited communications with the men had a negative impact on the children. -
4. Employment and Responsibilities of Each Parent
¶ 31. The chancellor found this factor to be neutral. The chancellor noted that while Shannon’s employment was more stable and produced a much higher income than that of Mary Jane, Mary Jane’s employment allowed her to spend more time with the children due to her having fewer job responsibilities. For those reasons, this factor balanced out equally between the parties.
5. Physical and Mental Health and Age of Each Parent
¶ 32. The chancellor, as well as the guardian ad litem, found this factor to be neutral.
6. Emotional Ties Between the Parents and Children
¶ 33. Both the chancellor and the guardian ad litem found this factor to be neutral.
7. Moral Fitness of the Parents
¶ 34. Both the chancellor and the guardian ad litem found this factor favored Shannon. However, I find that the chancellor placed undue weight on this particular factor. Also, the chancellor erroneously considered and applied this factor in his analysis of several other factors, as discussed further below.
8. Home, School, and Community Record of the Children
¶ 35. Both the chancellor and the guardian ad litem found this factor favored Shannon.
*1177 9. Preference of the Children
¶ 36. This factor was inapplicable.
10. Stability of the Home Environment of Each Parent
¶ 37. The chancellor found this factor favored Shannon. Again, the chancellor based this determination exclusively on Mary Jane’s communications with Brown and Hurt, stating the following:
But now I have to look at the stability of the home. The mother testified that she’s got these children in school now, that they’re in a good private school, as I understand it, that they have a stable environment, she claims. But they had one before they left here if she’d stayed off the internet and stayed off of her contact with her two boyfriends especially and running around on her husband. All of this indicates to me that she has really no stability of home life....
Here, the chancellor acknowledged that Mary Jane provided a stable home environment for the children and that the children were enrolled in a good school. Nevertheless, the chancellor disregarded this evidence and erroneously considered Mary Jane’s extramarital contact with Brown and Hurt under this factor.
11. Other Factors Relevant to the Parent-Child Relationship
¶ 38. Finding this factor to favor Shannon, the chancellor stated:
[0]ne thing that came to focus to me in the testimony here of the grandfather, parental grandfather, and it was this[:] what can his son give to these children[?] He was asked that question. He says love, discipline, affection, morals, ethics and responsibility. I think those six things sum up what can be expected in the raising of young children, especially young boys. And I have to give that factor[,] under these circumstances and based on the testimony[,].. to the father.
Again, the chancellor improperly applied the moral-fitness factor to this factor, as he did to other factors.
¶ 39. “Adultery of a parent may be an unwholesome influence and an impairment to the child’s best interest, but on the other hand, may have no effect.” Brekeen, 880 So.2d at 284 (quoting Carr v. Carr, 480 So.2d 1120, 1123 (Miss.1985)). Here, the chancellor found no adultery on the part of Mary Jane, yet faulted Mary Jane for engaging in secretive, inappropriate communications with Brown and Hurt. However, there is no proof whatsoever that Mary Jane’s actions had an adverse effect on the children. There is no evidence in the record that the children ever had any contact with Brown or Hurt, or were even aware of their mother’s communications with the men. Further, Shannon offered no evidence of the children ever having contact with Brown or Hurt.
¶ 40. It is clear from the chancellor’s opinion that Mary Jane’s inappropriate communications with Brown and Hurt caused her to be denied custody of her two children. The parties initially agreed that it was in the children’s best interest that Mary Jane have primary custody, as shown by the November 9, 2010 temporary order. Though Mary Jane’s contact with the two men may be a poor reflection on her as a spouse, that is no indication that she is no longer suited to have primary custody of her children. The record shows that it is in the children’s best interest to remain in the primary care of their mother. Mary Jane has been their primary caregiver since birth. She has been responsible for the children’s schoolwork and doctor’s appointments, as well as monitoring and supervising William’s progress with speech therapy, which Shannon admittedly refused to do. The chancellor *1178 ignored these factors and overemphasized Mary Jane’s inappropriate contact, though there was no evidence of adultery. The award of primary physical custody to Shannon is simply unsupported by the evidence. Notably, the record before us lacks evidence of Mary Jane’s inappropriate communications with Brown and Hurt being detrimental to the children. The chancellor improperly applied the Albright factors. Therefore, I feel we are obliged to find the chancellor in error.
II. Whether the chancery court erred by using custody to punish Mary Jane.
¶ 41. Mary Jane contends that the chancellor punished her by awarding primary physical custody to Shannon due to her communications with Brown and Hurt and her allegations of child abuse against Shannon. “Marital fault should not be used as a sanction in custody awards.” Albright, 437 So.2d at 1005. I find that undue weight was placed on Mary Jane’s inappropriate contact with Brown and Hurt. As for the allegations of child abuse, while the guardian ad litem found no evidence to support the allegations, the record shows that Mary Jane’s concerns were legitimate. Mary Jane testified that the children said they were touched inappropriately on more than one occasion.
¶42. According to Mary Jane, statements made by the children led her to believe that they had been sexually abused, which was why she filed the motion for appointment of a guardian ad litem and for a forensic examination. In her motion, Mary Jane made clear that she was “making no allegations as to who[m] the perpetrator might be,” but instead she was requesting an examination to “determine whether the children have been abused and[,] if so[,] the identity of the perpetrator.” Nowhere in the motion does Mary Jane allege that Shannon sexually abused their children. Mary Jane was questioned at length by the guardian ad litem about the statements. The polygraph examination administered to Mary Jane by the guardian ad litem indicated that Mary Jane was being truthful about her concerns.
¶ 43. Regarding the allegations, the trial court stated:
[Mary Jane] turns around and tried to bolster her case, I think, really, makes these false accusations, which she later admits and even the guardian ad litem states there was no credible evidence to support them and the polygraph test clearly indicated that.... That’s not a very good parenting skill to advance against the father of your children unless you know it’s for sure.
Based on this statement alone, I cannot say with confidence that the chancellor intended to penalize Mary Jane for raising allegations of child abuse — specifically considering the fact that the chancellor denied Shannon’s motion for an assessment of fees and costs related to his defense of the allegations. However, the record does show that the chancellor sanctioned Mary Jane for her inappropriate contact with Brown and Hurt by taking primary custody of the children away from her and awarding it to Shannon, as there was no evidence to indicate that her contact with the men had an adverse effect on the children. As previously stated, marital fault may not be used as a sanction in child-custody awards. Therefore, I find the chancellor’s custody award to be an abuse of discretion.
III. Whether the chancery court erred by failing to provide a summary of the guardian ad litem’s recommendations and by failing to provide its reasons for rejecting those recommendations.
¶ 44. The majority finds no error in the chancellor’s failure to provide a summary *1179 of the guardian ad litem’s recommendations and failure to provide his reasons for rejecting those recommendations. I respectfully disagree. “[Tjhere is no requirement that the chancellor defer to the findings of the guardian ad litem[.]” S.N.C. v. J.R.D., 755 So.2d 1077, 1082 (¶ 17) (Miss.2000). However, the chancellor “shall include at least a summary review of the qualifications and recommendations of the guardian ad litem in the court’s findings of fact and conclusions of law” when the appointment of a guardian ad litem is statutorily required. J.P. v. S.V.B., 987 So.2d 975, 982 (¶ 20) (Miss.2008) (citing S.N.C., 755 So.2d at 1082 (¶ 18)). “[I]f the court rejects the recommendations of the guardian, the court’s findings must include its reasons for rejecting the guardian’s recommendations.” Id. (emphasis added) (citing Floyd v. Floyd, 949 So.2d 26, 29 (¶ 8) (Miss.2007)).
¶ 45. The majority correctly states that Mississippi Code Annotated section 93-5-23 (Rev.2004) requires the appointment of a guardian ad litem where allegations of child abuse are made. Though the chancellor complied with the statute by appointing a guardian ad litem following the allegations of abuse, he did not provide a summary of the guardian’s recommendations, nor did he provide his reasons for rejecting the guardian’s recommendations. The guardian ad litem made the following recommendation:
[I] would recommend to the Court a finding that it’s in the best interest of the minor children that ... primary physical custody ... be vested with [Mary Jane], with [Shannon] enjoying visitation as set by this Court.
[[Image here]]
I did not find[,] respectfully[,] that [Mary Jane’s] conduct reflected on her as a parent but rather as a poor spouse.
The only regard the chancellor gave to the guardian’s findings and recommendations was the following:
I’ve also considered the ... guardian ad litem’s recommendations here. To some extent, I disagree with those, and to some extent, I’ve agreed. But I find under the circumstances and based on these factors under Albright that the primary physical care, custody and control of these two minor children will be and the same is hereby awarded to the father.
Nowhere else in the record does the chancellor mention the findings and recommendations of the guardian ad litem. The chancellor did not state his reasons for disagreeing with the guardian ad litem’s recommendations. Considering the great disparity between the chancellor’s findings and those of the guardian, and the fact that the guardian’s appointment was statutorily required in this case, I find reversible error in the chancellor’s failure to do so. Nevertheless, as previously discussed, the record simply does not support the finding that Shannon is better suited than Mary Jane to have primary physical custody of the children.
¶ 46. In the majority opinion, the Court cites Tritle v. Tritle, 956 So.2d 369, 373 (¶ 8) (Miss.Ct.App.2007), when it discusses the chancellor’s responsibility to weigh the evidence. However, this opinion does not suggest a reweighing of the evidence or substitution of our opinion for the chancellor’s opinion. In this opinion, it is asserted that the chancellor improperly applied the Albright factors and used an incorrect legal standard, which constitutes reversible error. This case is distinguishable from the Tritle case because in that case, the Albright factors were properly addressed and the correct legal standard was applied.
¶47. The majority opinion also cites Ethridge v. Ethridge, 926 So.2d 264, 267 *1180 (¶ 13) (Miss.Ct.App.2006), and it is stated that the chancellor there only referred to the guardian ad litem’s report once. However, in the Ethridge opinion, the chancellor properly addressed the guardian ad litem’s report even though it was only referred to once. Id. It is also noted in the Ethridge case that the chancellor fashioned a remedy for the best interest of the children when custody was awarded to the mother, who allegedly was having an affair. Id. at 267 (¶ 12).
¶48. The moral fitness of the mother can properly be questioned, but it cannot outweigh all the other evidence of the mother’s fitness to be awarded custody. See Hollon v. Hollon, 784 So.2d 943, 952 (¶ 37) (Miss.2001). In the present case, there was no showing that the alleged immoral acts of the mother had any effect on the children.
¶49. For these reasons, I would reverse and render the child-custody award.